Okay, call the next case, Christie Bell Vs. Cheswick. May I proceed, Your Honor? Yes, sir. Mr. Misuga? Good morning, gentlemen of the Third Circuit. May the Court be informed that I am Peter Misuga from Misuga, Liddell, and Dubin, and we represent the Bell plaintiffs. While I hate to condemn an opinion that I'm appealing as badly decided, this opinion was totally wrongly decided. The district judge, without authority and without precedent, literally said that the Clean Air Act preempts the statute of the Clean Air Act. And the precedent that the district judge utilized was a case, a U.S. Supreme Court case, American Electric Power, which never discussed the savings clause of the Clean Air Act and only talked about federal common law as being displaced when the greenhouse gas emission standards were adopted by the EPA. The savings clause was not even an issue in that case. The next case that the district court utilized in its opinion, eliminating the savings clause of the Clean Air Act for the plaintiffs, was Homer. And Homer was decided by the same district judge. And that district judge said that common law public nuisance brought by the state of Pennsylvania against a Pennsylvania defendant utilizing Pennsylvania law by a Pennsylvania plaintiff was preempted by the Clean Air Act. That's wrong because the Clean Air Act and OULET, which interpreted both the CWA, the Clean Water Act, and thus the Clean Air Act, says that affected state law is the law that is preempted. But of course, if prevailing on the state claim has the result of altering the conformance with federal standards, Clean Air Act standards, and you're essentially asking the defendant to increase your standards to avoid the ash that falls on my property. Your Honor, and that observation was answered by both the Clean Air Act itself and OULET and the Clean Water Act interpreting the identical provision of the Clean Water Act. What did the Clean Air Act say? The Clean Air Act says, Your Honor, that states, individual states, may at all times have interaction with pollution standards only to the extent that states can promulgate and enforce more stringent air pollution standards than that announced by the EPA. At any time, pursuant to the explanatory clause of the savings provision of the Clean Air Act, the individual states may have more stringent provisions and in the savings clause can enforce those provisions by court. Does that require an affirmative act by the state? I mean, your claim is a common law toward, isn't it? Our claim is, yes it is, Your Honor. It is negligence, trespass, and nuisance by the appellee defendant which caused property damage to those homes within one mile of the appellee defendant's facility. Why is that necessarily Pennsylvania exacting stricter standards? Because the court again stated that the appellee defendant need only know the common law of its own state and the effect of its common law of its own state to comply with pollution standards. Well, now, maybe restating Judge Fuentes' question, your adversary beats the drum pretty hard on the fact that there are these federal standards that are carefully crafted, costs and cleanliness and all that, and it gets down to the local juries who are actually going to be making the decision. Does that make sense to allow that to occur? Yes, Judge. To allow a local jury to thwart this carefully crafted regime, if you will. Judge, the regime, carefully crafted as you put it, can only work if it's comprehensive and includes state action pursuant to the statute which requires state action and the savings clause which provides for damages and any other relief pursuant to the actions or inactions of that defendant polluter. Pennsylvania has an environmental protection agency, doesn't it? Pennsylvania Environmental Protection Agency. Yes, your honor, it does. And it enacts regulations, doesn't it, that may impose stricter standards? May, your honor. And the problem with the question that you asked. Yeah, go ahead. We allege that there has been protests in the town, there have been communications with the state legislature by the inhabitants, that there's been government violation action against the defendant appellee. Nothing has changed. And the property damages to the real and personal property of the plaintiff appellees continue every day. Doesn't, you mentioned American Electric Power versus Connecticut, a 2012 decision of the U.S. Supreme Court. Doesn't that case, assuming that we agree that Ouellette, which was a Clean Water Act case, would have been decided the same if it had been a Clean Air Act case, assuming we agree with that, doesn't American Electric Power at least call into question the continued viability of Ouellette? No, your honor, because that case was filed in 2004. 2004, and it was filed under the federal common law. It had nothing to do with the Clean Air Act, because the greenhouse gas provisions had never, ever been formulated until, I believe, 2007. And this case kept proceeding under the federal common law. The federal common law, as we all know, only exists when federal judges say it exists. I thought you were going to say something about we all know what federal common law is. Right. And finally, the Supreme Court said, pursuant to this case and this case only, AEP, there is no federal common law as to greenhouse gas prevention. It didn't speak at all to common law damages created by pollution. What about Cooper? Thank you, your honor. Cooper versus TVA. You were going to move to that, weren't you? I was immediately coming to that and then to Cromer. North Carolina Cooper says the following, your honor. And if I might go into the background, North Carolina decides that it wants extremely stringent provisions. And it then creates several statutes which require its own power plants to literally stop the emission of odors and particulates. And North Carolina says that's a great statute. Let's apply it to the TVA in Tennessee and Alabama. Now, the appeals court literally, in its opinion, says we can't figure out whether the district court tried this case under North Carolina law, Alabama law, or Tennessee law. But it's really immaterial because it violates OOLET. The action of North Carolina in transposing its statute to Alabama and Tennessee is an affected state law impacting on the source state. Secondly, the Fourth Circuit observed that even if the North Carolina Cooper plaintiff had been correct and it had been tried under Alabama law, and had been tried under Tennessee law, and was a source state law being tried, nuisance in those two state laws, they forgot to include negligence in their complaint as a necessary component of nuisance. What I wonder, though, about the Fourth Circuit's decision is their wording that says that Congress clearly, clearly preferred to have experts deciding these clean air questions over federal judges. Judge, I realize that that observation was made by the court. It sort of applies here, doesn't it? No. Well, Judge, the problem with looking at the Clean Water Act and the Clean Air Act, which are near identical as comprehensive statutes, is they're only comprehensive if there is a provision included by Congress to make sure that the private folks, you and I and all these folks, take damage by pollution, have a right of relief, cause of action for money damages. Let me read you a statement from this case that you are talking about. It's that courts traditionally have been reluctant to enjoin as a public nuisance activities which have been considered and specifically authorized by the government. And the next sentence says, this is especially true where the conduct sought to be enjoined implicates technically complex area of environmental law. That sounds like our case. Yes, but if they are operated negligently, they are a public nuisance. And if they cause damages, then they're violating their own permit and subject to the any other relief provision accorded by Congress to the people for damages by pollution. And it's only source state plaintiffs under source state law that can sue source state polluters. We aren't talking about any kind of grand damage to any kind of scheme, national or otherwise. The appellee defendant knows that if it damages property, it's responsible for that damage. If you were to prevail, of course, the defendant has to change something. Judge, I am a little bit hard on you. And I don't speak as loud as I should. If you were to prevail in this case, how many, this is a class action, isn't it? It was pled as a class action. It's not been certified, Your Honor. But we have over... 1,500? There are 1,500 homes. We have 900 plaintiffs so far or 900 retained clients without a class certification order. Okay. Can I ask you just a follow-up? Because if you are to prevail, then, of course, the defendant has to change something. Judge... It's going to have to be subjected to suit after suit after suit. Judge... Or is the response that's their problem? There is one of two things that can happen. The defendant appellee can maintain to operate pursuant to his emission limitations negotiated by the appellee defendant with the EPA representative. He can continue along merrily. But if you continue to cause damage to real property within one mile, which we already have an expert report saying that these chemicals and odors are emitted by that facility and fall within one mile, or perhaps he can put on a filter cap. That's his business, not ours. And as to injunctive relief, I know what the Clean Air Act says. I know what the Clean Water Act says. The only injunctive relief that the plaintiffs could receive in this case is, Mr. Appellee, go clean up their houses, that a federal judge would tell them. He can't tell them to operate differently because they have a permit. Second, or... I mean, there's another problem, Your Honor. You talk about preclusion, preclusion, preclusion. Mel Tronick, a U.S. Supreme Court case, said very specifically, it is spectacularly odd to allege that Congress wanted private common law damages precluded when it doesn't even hint at that. Second of all, Silkwood talked about preclusion and said the failure of Congress in an act, comprehensive, quote, unquote, to fail to provide for a damages federal enforcement provision for conduct by the polluting party, demonstrates that Congress did not preclude, did not intend preclusion. Yeah, going back to AET for a minute, the Supreme Court case, I noticed that the language they used was displacement. Is that materially different than preemption? Your Honor, we're talking again about the... You've got to get behind the microphone. I'm sorry. It's okay. We're talking about the federal common law in AEP. And while I hesitate to say I'm confused, A, I don't know when there is and is not federal common law, and I don't know if federal common law can be preempted or just displaced. I think the court meant what it said. Just like the court in Milwaukee versus Connecticut, when examining the CAA savings clause and the CWA savings clause, said, they mean exactly what they say. They mean that if there's other relief for any other purposes, it's there. Okay. Let's finish up. Your Honors, I don't have any questions. Okay. Thank you very much. We'll get you back on rebuttal. You save time for rebuttal? Three minutes. May it please the Court. I'm Scott Osteich with the firm McGuire Woods, representing the affilies in this case, Cheswick Generating Station and Midwest Power Generation. I'm sorry, Genon Power Midwest. I'll start with the complaint because that's where the district judge did. What the district judge evaluated was an extremely broad attack on the operations of the Cheswick Power Facility. What the district judge looked at was several dozen chemical releases being assailed during normal emissions processes. He looked at things like the absence of scrubbers, even though the record in the Federal Register indicates, contrary to the argument, that the scrubbers are in place. He looked at all of the different facets that were alleged that would involve him in evaluating whether or not the proper processes were in place at the facility because there was injunctive relief requested and ultimately a jury would have to be impaled. The very basis for the district judge's decision was preemption, wasn't it? Yeah. Well, conflict preemption. He followed the analysis that the Third Circuit just recently went through in Ferena. Whether or not he identified that, I can't recall, but it's the conflict preemption analysis. If you arrive at that decision, doesn't that essentially write off the statute, the Savings Clause? It doesn't write it off. What it does is it implements it because the Savings Clause pretty much says that when, in fact, Congress intended to keep a state law, it would specify so. It was intended to make it easy for courts, not hard, because if there is a Savings Clause that's in effect, you should be able to look and find it. It's not a process of distilling what the intent of Congress was when it comes to Savings Clause. They're supposed to be clearly specified. And, in fact, there were two material savings provisions that are only one in this case, but two in the Olay case, which is frequently cited in this context. In the Clean Air Act, there's one savings provision that's material, and really what it is is it's clearing up any confusion of what happens when you have a citizen's food provision. When the Clean Air Act empowered challenges to what was happening at places like Cheswick, it did so by specifically giving advocates, like the appellants, the right to file a citizen suit. A citizen suit says you give 60 days' notice to the local government authorities and states. They have the ability to decide whether they are properly implementing the law, supervising the permits, and otherwise affecting the law and the requirements at the facility. If they don't believe they want to get involved in prosecuting the issue, then they concede the territory to the citizens who come in to do that for them. Yeah, but you do talk about these alternate remedies, as you just rightly pointed out, but will any of those remedies give these plaintiffs what they're looking for, property, you know, to clean up their properties? It won't, will it? Well, that's not really true because the way in which the remedies are created, first of all, the court said don't focus on remedies, focus on causes of actions. It's cause of actions that are conflicted. Remedies come along with a cause of action, so they're important, but the citizen suit specified exactly what Congress wants to do in the area of intervening into highly regulated areas. When you already have an incredibly complicated scheme, I challenge anyone to come up with a more integrated, maybe nuclear power plant, but electric generation utilities are about as regulated as it gets. I'd like to get your take on the savings clause itself because to me it seems quite broad, and I just want to read this provision. It says, nothing in this section, if I'm reading the right provision, nothing in this section shall restrict any right which any person may have under any statute or common law to seek any other relief. Right. It says nothing... It's really broad and allows any person to file any claim under common law, state or otherwise. Well, Judge, it says nothing in this section, and that very section is the one that empowered the citizen suit provision. So what Congress was doing is not taking away but giving. It was giving the citizen suit remedy, which was a means of citizens doing government's work when government doesn't want to do its work. Okay. Well, let me ask you this. How do you get around OLET? OLET was a Clean Water Act case. It's been commonly said, and in this court several times, that the Clean Air Act is always the same as the Clean Water Act. It isn't. OLET was a case in which an international paper had a facility on a lake, and the facility gave rise to Clean Air Act claims and Clean Water Act claims. But the Clean Air Act claims never made it to the Supreme Court of the United States. Only the Clean Water Act cases did. And when they looked at the Savings Clause, the Supreme Court of the United States agreed with our position that the generalized Savings Clause, what I call the Just Because Clause, that was in the citizen suit provision, that didn't apply because it was so generalized, it says in this section, it was so generalized that it could be ignored because it was just boilerplate. That was what the Supreme Court said in OLET, that particular provision. The one they ruled on was 1370, Section 2, and USC 1370, Section 2. That says, and I'll read the whole statute because I think it's important. Except as expressly provided in this chapter, nothing in this chapter shall preclude, and this is one, preclude or deny the right of any state or political subdivision thereof or interstate agency to adopt or enforce, A, any standard or limitation respecting discharges of pollutants, or B, any requirement respecting control or abatement of pollution. But then this is the part they actually ruled on. Two, or be construed as impairing or in any manner affecting any right or jurisdiction of the states with respect to the waters, including boundary waters of such states. It's a water-specific inclusion in the Clean Water Act that OLET was decided upon. There is no corresponding provision in the Clean Air Act. Boundary waters have channels. Channels take the water and direct it in predictable flows. The air goes where it will. It is a fundamental difference between the Clean Air Act and the Water Act as to the savings provision. If this case, this case which seeks damages for the particulates that have floated out of the plant and looking at the complaint, the light favorable to the plaintiff, have caused damage to the property, is not an appropriate case under the savings clause, what's the savings clause for? What kind of case then would succeed? Well, the thing about savings provisions is that Congress created generalized ideas that if there wasn't regulation, and if there wasn't permitting, and if there wasn't such comprehensive state, federal, and local integration, then the court would have to look to see whether that particular area was sufficiently regulated to squeeze out the generalized savings provision. Here, it's impossible to say that the Pennsylvania State Department of the Environment, the State DEP, and the Allegheny County Health Department, which administers the air rules, and the Title V permit, which specifies limitations on such things as emissions that impact and affect on property, and odor, and also the National Ambient Air Center. I'm not following you. I'm trying to figure out what is it that a private citizen can do under the savings clause. Justice Ginsburg said in AEP that even with federal law being displaced, there is no absence of remedy of what any citizen can do with regard to regulations like the Clean Air Act. Number one is the fact that the standards themselves are set by agencies. They're not set in hearings like this, where one advocate is arguing to three judges. There would be a plethora of people behind me who would be technical experts, scientists, people of that nature, who help set levels like they did with the National Ambient Air Standard, where they set the limit on what types of exposures, including particulates, would impair on property damage. So you can challenge limits as they're set. You can challenge the permits as implemented. You can bring a citizen suit and bring a full adjudicated process. The only thing Mr. McCougar would not be allowed to get in that instance would be a recovery of specific monetary damages for his clients. He would still get an attorney's suit. But the OLEC case recognized the ability to bring a nuisance claim. The OLEC case specifically looked at a section that allowed boundary water cases in a Clean Water Act context. It specifically said Congress preserved the right to do boundary water cases. And in that instance, the question was, do nine downstate states get to also impose their tort law on an international papers facility, or just one? And Justice Powell said, just one, the source state. But he created a two-master servanthood. And under the Clean Water Act, Congress specifically allowed that, under the savings provision. There is no comparable provision under the Clean Air Act. What about the rationale that there's nothing wrong with imposing a stricter standard under state statutory or common law? The states do that. Pennsylvania is as involved as you can be because the federal rules require a state implementation program. That's how attainment is achieved under the federal law, is for the state to impose its particular provisions that are vetted, that are approved, and that are implemented with state input. The standards that Cheswick is complying with are as high as you could have under state mandate. The one thing you don't have is what the Farina case said, is introducing a fourth and a fifth regulator at Cheswick. If Farina's standards applied here, they would say, you already have EPA, you already have the Pennsylvania Department of Environmental Protection, and you already have the Allegheny County Health Department. Let's add a judge who's deciding by injunction, and let's add a jury who's deciding based on the presentation of counsel in a courtroom. You know, it's very hard to ignore the fact that this is a serious injury that you argue has no remedy. I mean, is that your position? No. We argue the remedy was made in advance. The remedy was in the past tense. Well, the remedy was the fact that the cause that the comprehensive scheme put in place already picked levels, and scientists picked them, state authorities picked them, federal authorities, and local authorities. They picked levels at which the operation of a power plant can be balanced. But that sounds like a yes to me. I mean, it's – Well, I think – I can't help – I mean, you have to look at the complaint, and my favorite was in the plaintiff, and there's significant damage, and it continues, and they're seeking some relief. There is particulates. There are noxious chemicals that are floating down to their property, and they want relief. And what your argument is, kind of, that's too bad. Well, we're only following the argument Justice Ginsburg announced in AAP versus Connecticut. Not that it's not too bad. Isn't it – Justice Ginsburg said, isn't it wonderful that we've allocated so many front-end resources, that we are now setting these limits so carefully, that we are now requiring things like scrubbers, which Cheswick has, that we are now requiring permits, which Cheswick follows. If there was a non-following-of-permits situation, a citizen suit would easily remedy that with tremendous financial penalty exposure by Cheswick. Cheswick's not skating. Cheswick's under the closest evaluation in its history, and this particular community has more resources than ever before. That would be that we are doing what our permits and regulations require us to do. And what the careful thought and study that went into the permits, went into the ambient air settings, went into all the determinations of how to integrate. The President today is announcing a massive new program. There are all kinds of things going on to examine levels and implement them. The one thing that the case law has frowned on is the intersection and interjection into this process of ordinary citizens sitting on juries, which is what Farina scowled upon in the area of regulating cell phones, and also the interjection of judges being forced by injunction to become environmental regulators. That's no longer what Justice Ginsburg said that the federal courts should be doing, and similarly, the question left open is, is it a job for judges operating under state law? Can I ask you a question? It's very specific, and as far as I can tell, it wasn't briefed. Some of the chemicals that are alleged to have been admitted in the complaint are considered HAPs, right? Yes. 42 U.S.C. section 7412 D7 basically says HAP standards in the Clean Air Act shall not diminish a standard issued under state authority. How can that be, at least with respect to HAPs, how can that be preempted here? We're not alleging it's preempted. What we're arguing is that the HAP standards are being implemented at state level. The question is conflict preemption, which is, are you going to allow a jury to say it's unreasonable to operate within the HAP standards as implemented by the Pennsylvania DEP? If, in fact, Pennsylvania has said it's okay to operate within those HAP standards and operate within the Title V permit, but a juror decides, you know, I think there should be a different rule, then the power plant has to adjust its operations, not based on HAP standards and Title V permits and ambient air quality standards. It has to adjust it based on the next jury. Is it really a jury saying second-guessing a standard, or is it just simply one of your neighbors has particulate all over the swing set? Why is it unreasonable for your client to have to pay for that? It's completely within the system to protest and complain and to petition in that area. Justice Ginsburg could not have been more clear that the right of petition is alive and well. It's who are you talking to. Are you talking to a class-action plaintiff's lawyer that creates a different pressure within a highly regulated system, or are you talking to the particular operator of the facility who's underneath the jurisdiction and obligation of the local county health department and under the State Department of Environmental Protection? And it's basically the who is the enforcer, who is the implementer, and society at the level of the Supreme Court on down has said, let's do this in a technical, integrated way. Instead of conflicting with those schemes, statutes, and schedules, by putting people under multiple masters when it should be an efficient, cost-effective process to get cheap power to those residents at a safe and effective manner. Mr. Ross, I thank you very much. Thank you. Mr. Misuga? Again, good morning, gentlemen. Mr. Misuga, how about starting with the savings clause? Yes, Your Honor. Your opposing counsel makes a big, tries to draw a major distinction between the savings clause in the Clean Water Act and the savings clause in the Clean Air Act and claims that that savings clause was much broader and saved more. What's your response? Judge, I previously talked about that, and I'll talk about that again. In the Clean Water Act, the explanatory clause said, literally, anybody can do anything to affect clean water. In Clause 2, which is what he's talking about, said, except no state shall be prohibited from engaging in or enforcing more stringent water pollution standards. In the Clean Air Act, the explanatory clause says that the states, any state can involve itself in air pollution, preclusion, or elimination as long as the standard imposed by the source state upon source state polluters, as in the Clean Water Act, is more stringent than any standard allowed by the EPA. Right. That is, so there is no difference. That clause that he talked about doesn't expand the Clean Water Act. As Ouellette said, limits the Clean Water Act, and Congress limited it the same way by saying more stringent air pollution standards by a source state to a source state polluter in the Clean Air Act. Do I answer your question, Judge? I think so. Okay. Are there any other questions? I just have two things to say. Go ahead. Go ahead. The Eppley defendant, in his brief, literally called savings clauses granting rights to the people as nothing more than placeholder statutes. I have never heard anybody call a statute of the United States a placeholder. Second of all, if this opinion is allowed to stand with no precedent behind it at all, anywhere, except the case that this judge himself decided, based upon a case that didn't have any relationship to the savings clause. Is it true that this judge's opinion was applied in some other case? I vaguely recall reading that somebody else adopted the rationale. We received an opinion of an Iowa circuit court about two weeks ago from counsel for the Eppley. That's the only place where we've been able to find any court anywhere declaring the savings clauses of either the CWA or the CAA as preempted. Even the case Cromie, which he talks about in the Fifth Circuit, which, quote, preempted, unquote, in the district court, the Fifth Circuit Court of Appeals reversed that case and stated without hesitation that the Fifth Circuit has never, ever ruled that the savings provisions granting rights to the people to sue for damages caused by pollution has ever been preempted. And I think, as your honors know, then the defendant asked for an on-bank hearing and then one of the judges of the Fifth Circuit was disqualified for something, there couldn't be a quorum, and then there was argument about whether to reinstate the opinion because they couldn't have an on-bank hearing. Certainly, that procedural history and that presidential value is suspect at the least. Mr. Mussovia, thank you very much. Thank you. Thank you both gentlemen for excellent arguments. Thank you very much. Take the case under advisement.